UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **CINDY-MARIE ROGERS,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. |
| v. | ) | 15-12899-FDS |
| | ) | |
| **AUSDAL FINANCIAL PARTNERS, INC., and JOAN NORTON,** | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER ON PETITIONER'S MOTION
TO CONFIRM THE ARBITRATION AWARD AND
<u>RESPONDENTS' MOTION TO VACATE THE ARBITRATION AWARD</u>**

**SAYLOR, J.**

This is an action to confirm an arbitration award entered by a panel of three arbitrators in resolution of a dispute between petitioner Cindy-Marie Rogers and respondents Joan Norton and Ausdal Financial Partners, Inc. Ausdal and Norton contend that the award must be vacated pursuant to 9 U.S.C. § 10(a)(2)-(4) because the arbitration panel acted improperly. Specifically, they contend that the panel (1) awarded damages that were neither claimed by petitioner nor supported by the evidence, (2) awarded damages in a manner and amount that was contrary to clear law, and (3) denied respondents a fair opportunity to obtain material evidence through discovery.

The essential issue in this case is not whether this Court would have reached the same decision, or even whether the decision is reasonable, sensible, or fair. Rather, it is whether this case falls within one of the narrow statutory grounds that permit an arbitration award to be

overturned. Put simply, a party seeking to overturn an arbitration award faces a very steep uphill climb; that is true even if the award is against the great weight of the evidence or otherwise unreasonable or wrongly decided. Respondents here have not satisfied that demanding legal standard. Accordingly, and for the reasons set forth below, the panel's award will be confirmed.

I. **Background**

The facts are set forth below as reflected in the record of the underlying arbitration proceeding unless otherwise noted.

In early 2010, petitioner Cindy-Marie Rogers was offered an early retirement buyout package from her employer, Verizon Communications. In considering whether to take the offer, Rogers consulted with respondent Joan Norton, a financial advisor and registered representative of respondent Ausdal Financial Partners. Following that consultation, Rogers accepted the buyout package offer from Verizon, purchased a Prudential variable annuity through Rogers and Ausdal, and retired. (Record at 2-3).

Rogers eventually became dissatisfied with the annuity's performance. On May 16, 2014, she initiated an arbitration proceeding against Norton and Ausdal. (R. at 1544-47). Her customer agreement with Norton and Ausdal included an "Arbitration Agreement," in which the parties agreed to submit "any controversy" between them to arbitration before either the New York Stock Exchange, any other national exchange on which a transaction giving rise the claim had occurred, or the Financial Industry Regulatory Authority ("FINRA"). (R. at 1547, Customer Agreement ¶ 19). Rogers filed her claim with FINRA, and the parties do not dispute that arbitration was therefore subject to FINRA rules governing arbitration proceedings.[1]

---

[1] The customer agreement between Rogers and respondents provided that "[t]he rule of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement." (R. at 1547, Customer Agreement ¶ 18).

The customer agreement also contained an arbitration disclosure clause; among other things, the disclosure stated that "[t]he ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings." (R. at 1547, Customer Agreement ¶ 18). The clause further disclosed that "[t]he arbitrators do not have to explain the reason(s) for their award." (*Id.*).

In her claim, Rogers alleged that she decided to take early retirement only because Norton had advised her that the annuity she purchased would support monthly withdrawals of $3,765; that the annuity was unsuitable because it could not sustain withdrawals of that amount; and that Norton failed to advise her that any withdrawals made before Rogers reached age 59 ½ would be subject to a 10% tax penalty. (R. at 2, Am. Statement of Claim at 1-2). Rogers requested consequential damages, disgorgement of profits, lost opportunity damages, rescission damages, costs, punitive damages, pre-award interest, and attorneys' fees. (R. at 19, Am. Statement of Claim at 19).

Norton and Ausdal responded to the claim, denying the allegations and asserting various defenses. In countering Rogers's assertion that she relied entirely on Norton's advice, respondents argued that Rogers instead actually relied on information in documents given to her by Verizon. Respondents also sought to argue that Rogers's decision was influenced in part by the fact that had she not retired, her office would have been moved from Boston to Lowell, Massachusetts, necessitating a long commute without the availability of public transportation. (R. at 158).

After Rogers filed her claim, the pre-hearing process appears to have proceeded in normal fashion. Only one issue from the pre-hearing record is relevant to the case as it stands now. On December 31, 2014, respondents filed a motion with the panel, pursuant to FINRA

Rules 12512 and 12513, to issue subpoenas to fifteen non-parties for the production of documents and testimony. One of the non-parties from whom respondents sought discovery was Rogers's former employer, Verizon Communications. In their motion, respondents argued that Verizon possessed documents and information relevant to the following:

> . . . the information provided to [Rogers] prior to her accepting early retirement, the early retirement benefits she received, the retirement benefits she would have received if she did not take early retirement, her working conditions at the time she retired, her working conditions if she had not retired, and union contracts affecting the above[.]

(R. at 239-40, Respondents' Motion to Issue Subpoenas and Requests for Non-Party Production of Documents and Witness Testimony).

On February 19, 2015, the panel chair denied the request without a hearing. (R. at 243-44). The chair did, however, issue a written order on the request, stating:

> In general, FINRA arbitration is a forum in which the parties have agreed to waive the typical motion practice and extensive discovery of litigation for "the simplicity, the informality and expedition of arbitration." The Respondents' extensive, overbroad, and burdensome motion for issuance of twelve (12) subpoenas requiring extensive discovery by non-parties seeking irrelevant, confidential, privileged and other protected information is hereby denied in its entirety, except for the Order to the Keeper of Records for Prudential Financial, Inc. . .
>
> No further requests for subpoenas for discovery by the Respondents will be considered by the Arbitrator in this case.

(R. at 243, Order on Request for Issuance of Subpoenas and Requests for Non-Party Discovery). In addition, the chair assessed the full costs of reviewing the motion against respondents. (*Id.*).

Respondents then filed a motion to compel production of the documents from Rogers along with a motion for reconsideration of the denial of their request. (R. at 245-60). In their motions, respondents elaborated on their contention that the documents and information requested were both necessary and relevant to their defense. The chair denied both the motion to compel and the motion for reconsideration, explaining that "Respondents have continued to seek

4

basically the same documents that were [previously] denied." (R. at 312-13). The chair assessed full costs against respondents, and ordered that "Respondents shall not seek the . . . documents or make any further argument for said documents, or else a monetary penalty and/or other sanctions will be issued against the respondents." (*Id.*).

The arbitration panel held a hearing on the substantive claims from May 4 through May 8, 2015. On the second day of the hearing, the chair asked why Rogers's Verizon early retirement package documents had not been produced:

> PANEL CHAIR: There's one thing that has come to our interest as a panel that we would like to see what the pension offer was. I gather there's no document that has been produced in this or agreed to in this.
>
> MR. KUHL [Attorney for Rogers]: When you say "pension documents" ---
>
> CHAIR: That is the amount of pension offered from Verizon.
>
> MR. KUHL: That would have set forth specifically her monthly amount had she accepted the pension?
>
> CHAIR: Right.
>
> MR. KUHL: I can't put my finger on that document either.
>
> [MR. CASILIO (Attorney for Rogers)]: So I think what happened is she didn't have it or it got lost in the years. Since then obviously she doesn't have her compliance—she wasn't—at the time she accepted this she wasn't thinking she was going to be suing anyone?
>
> CHAIR: Did both sides talk about trying to get that from Verizon somehow?
>
> MR. GOSSBAUM [Attorney for respondents]: That was the subject of our motions.
>
> CHAIR: I know, but you went overboard on your motions, and I'll put that on the record. But that one limited piece of information seems to be important to both sides and to the panel.

(R. at 787-88). Although Rogers did eventually produce some documents relevant to her offer from Verizon, she was unable to produce the full package. She never produced any documents

responsive to what her working conditions would have been had she not retired.

On June 8, 2015, the panel issued an award in favor of Rogers in the amount of $1,240,000. The panel rejected Rogers's claims for punitive damages and attorney's fees. (R. at 3000-06). The decision read in relevant part:

> After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1. Respondents are jointly and severally liable for and shall pay to the Claimant compensatory damages in the amount of $1,240,000.00 plus interest at the rate of 12% per annum from May 16, 2014 until the award is paid in full.
>
> 2. Respondents are jointly and severally liable for and shall pay to the Claimant costs in the amount of $10,512.66.
>
> 3. Respondents are jointly and severally liable for and shall pay to the Claimant $250.00 to reimburse Claimant for the non-refundable portion of the filing fee previously paid to FINRA Dispute Resolution.
>
> 4. Respondents' request for expungement is denied.
>
> 5. Any and all relief not specifically addressed herein, including punitive damages and attorneys' fees, is denied.

(R. at 3001, Award). The panel did not elaborate on its reasoning underlying the award, and neither party requested that it do so.

On June 17, 2015, Rogers filed a "Petition to Confirm Arbitrators' Award" in Suffolk Superior Court. Norton and Ausdal removed the petition to federal court and subsequently filed a motion to vacate or modify the award. Rogers has opposed that motion, and filed her own motion to confirm the award.

## II. Standard of Review

Judicial review of an arbitration decision is "extremely narrow and exceedingly deferential." *Dennis v. Wachovia Sec., LLC*, 429 F. Supp. 2d 281, 287 (2006) (quoting

*Wheelabrator Envirotech Operating Servs., Inc. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 43 (1st Cir. 1996)). When a party seeks judicial review of an arbitration decision, a court will "set that decision aside only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). Indeed, an arbitrator's award will be upheld even in light of a "serious factual mistake" so long as "there exists any plausible argument to support the arbitrator's decision." *Dennis*, 429 F. Supp.2d at 287 (quoting *North Adams Reg'l Hosp. v. Mass. Nurses Ass'n*, 889 F. Supp. 507, 512-13 (D. Mass. 1995)).

The Federal Arbitration Act ("FAA") defines the specific grounds for which an arbitration award can be overturned in 9 U.S.C. § 10. Specifically, plaintiff relies on the following provisions of § 10:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (2) where the was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10(a)(2)-(4). The challenging party has the burden to establish "substantially more than an erroneous conclusion of law or fact." *Local Union No. 251 v. Narragansett Imp. Co.*, 503 F.2d 309, 312 (1st Cir. 1974).

### III.   Analysis

The primary purpose of the Federal Arbitration Act is to "ensure that 'private agreements

to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  When enforcing an agreement to arbitrate a dispute, arbitrators must "give effect to the contractual rights and expectations of the parties." *Id.*  Indeed, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  Parties are generally allowed to structure arbitration agreements as they desire.  *Id.*; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).  Further, "absent some ambiguity in the agreement . . . the language of the contract . . . defines the scope of the disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Arbitration by FINRA is governed by its own code of procedure.  The parties do not appear to dispute that FINRA procedures governed the arbitration proceedings in this case.

### A.     9 U.S.C. § 10(a)(4) – Exceeded Powers

Respondents' primary contention is that the award should be vacated under 9 U.S.C. § 10(a)(4) because the panel exceeded their powers in awarding $1,240,000 in damages to Rogers.  Section 10(a)(4) allows a court to vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."  An award may be vacated pursuant to § 10(a)(4) "[o]nly if 'the arbitrator act[s] outside the scope of his contractually delegated authority.'" *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2068 (2013) (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)).  Thus, "[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt–Nielsen*, 559 U.S. at 671.

Respondents' argument has two parts: first, they contend that the arbitrators awarded damages on a claim or issue not before the panel; and second, they contend that the panel's damages calculation was contrary to controlling law.

Respondents first argue that the damages were not awarded pursuant to a claim presented to the panel, and that the panel therefore exceeded its powers in making the award. In support, respondents cite to *Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979). In *Totem*, the Fifth Circuit vacated an arbitration award where the panel awarded damages under a theory that the prevailing party had expressly conceded was not at issue before the decision. *Id.* at 651. That is not the situation in the present case.

Here, the panel's brief award, made without explanation or elaboration at the request of the parties, makes it difficult (if not impossible) to determine the reasons for the specific amount the panel awarded to Rogers. However, as respondents themselves note, the panel "could have reached the damage award of $1,240,000 [by assuming] Ms. Rogers would not have retired at age 49 ½ and would have worked to age 65 (15 ½ more years) and would earn $80,000 per year in each of those years." (Resp. Answer ¶ 21 (Dkt. 2)).[2] The question, then, is whether Rogers presented such a claim to the panel. The record demonstrates that she did so, or at least in a manner sufficient to satisfy the applicable standard.

Rogers requested relief for several types or theories of damages in her Amended Statement of Claim; the first of these specifically requested "[c]onsequential damages, including: Cindy's lost compensation from her Verizon employment at the rate consistent with her last year's rate of compensation until a Panel-determined retirement date." (R. at 19, Statement of Claim at 19). That description of requested damages aligns with respondents' own proffered

---

[2] Respondents also argued in their pre-hearing brief to the panel that Rogers "is asking this Panel to award her . . . an amount approximating about $1.2 MM." (R. at 2294-95).

explanation.

As noted, a panel's decision should not be vacated so long as "there exists any plausible argument to support the arbitrator's decision." *Dennis*, 429 F. Supp. 2d at 287 (quoting *North Adams*, 889 F. Supp. at 512-13). Respondents themselves have put forward just such a plausible argument that matches the amount awarded to Rogers to one of her theories of damages.[3]

Respondents further contend, however, that "FINRA Rules make it perfectly clear that an award must be based on a claimant's proof at the hearing and her requested final award, not what a claimant asked for in an earlier pleading." (Resp. Mem. 26). Respondents, however, cite primarily to the "FINRA Arbitrator's Guide," and do not cite any actual FINRA rules that specifically support that position.[4] Although Respondents do cite to FINRA Rule 12904(3), that rule requires only that the award contain "[t]he damages and relief requested," and "[t]he damages and relief awarded." Here, the panel's written award contains sections addressing both, with the section headings conspicuously highlighted in bold, underlined, and typed in all caps, denoting "**RELIEF REQUESTED**" and "**AWARD**." (R. at 3001, Award) (emphasis in original). Accordingly, the Court will not vacate the award on the ground that FINRA rules were not followed with respect to the submission and award of damages.

Respondents' second contention under § 10(a)(4) is that the panel exceeded its powers by awarding a damages amount that was contrary to controlling law. Specifically, respondents contend that the panel failed to reduce the damages award to present value, and failed to adjust

---

[3] Nor, unlike *Totem*, have respondents demonstrated that Rogers disavowed her claim for lost compensation at the hearing.

[4] Even assuming a failure to follow an arbitrator's guidebook is a proper basis to vacate an award, it is not clear that the panel's conduct was at odds with the FINRA Arbitrator's Guide in this cases. Here, although the Guide recommends that the parties submit a "final request for damages" before the close of the hearing, it specifies that "new final damage requests, *as well as the parties' original requests as specified in their pleadings*, should be considered during the panel's deliberations." FINRA Arbitrator's Guide at 60 (emphasis added).

the damages to take into account Rogers's duty to mitigate damages by working elsewhere.

It is well-established that arbitrators are not generally required to give the reasoning behind an award. *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 245 n.4 (1962). Although the panel *may* have arrived at the number awarded simply by estimating Rogers's lost future earnings, without more, it is also possible that the panel employed a different methodology. For example, it is possible that, through arithmetic known only to the panel, the panel (1) calculated Rogers's lost future earnings, (2) reduced those earnings to account for Rogers's duty to mitigate (assuming the panel found such a duty existed), and (3) discounted the result to present value before (4) adding back in an estimate of the amount by which Rogers's Verizon retirement portfolio would have increased in value and (5) reimbursing Rogers for tax liabilities incurred.

Regardless of how the panel calculated the particular damages number it awarded, "[c]ourts [ ] do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does reviewing decisions of lower courts." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Thus, even if the panel did err in failing to reduce the damages as respondents allege, that error was not of the kind that would permit the Court to overturn the award. *See Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir. 1990).

Ultimately, the question before the Court is not whether the arbitrators made the correct decision, or even whether the arbitrators were rational or fair. Instead, it is whether the arbitrators had the authority to decide as they did. *See Raymond James Fin. Servs., Inc. v. Fenyk*, 780 F.3d 59, 67 (1st Cir. 2015). Respondents' own customer agreement specifically empowered the panel to hear "any controversy" between Rogers and respondents. "Although the arbitration decision may have been incorrect as a matter of law, it was not beyond the scope of the panel's authority." *Raymond James*, 780 F.3d at 60. Respondents have raised serious questions about

the reasonableness and fairness of the award, but they have not demonstrated that the panel exceeded its legal powers.

### B. § 10(a)(3) – Exclusion of Material Evidence; Misbehavior

Section § 10(a)(3) allows a district court to vacate an award "where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).

Respondents' primary contention that § 10(a)(3) was violated centers on the panel's denial of respondents' request to issue subpoenas to non-parties, including Verizon.[5] Respondents allege that had they been allowed to subpoena Verizon, they would have received more than 60 pages of documents outlining the benefits and amounts available to Rogers as part of the early retirement package. Respondents argue that because their defense revolved around what information was available to Rogers before she accepted Verizon's early-retirement offer, the panel deprived them of the opportunity to access and present material evidence when it denied their requests for a subpoena.

"Arbitration panels have significant discretion in admitting evidence and conducting discovery proceedings." *OneBeacon Am. Ins. Co. v. Swiss Reinsurance Am. Corp.*, 2010 WL 5395069, at *2 (D. Mass. Dec. 23, 2010) (citing *Hunt v. Mobile Oil Corp.*, 654 F. Supp. 1487, 1512 (S.D.N.Y. 1987)); *see also National Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985) ("Arbitrators are not bound by formal rules of procedure and evidence."). Consequently, "[Section] 10(a)(3) does not require arbitrators to consider every piece of relevant

---

[5] The First Circuit has not decided the issue of whether a failure to issue a subpoena constitutes a refusal to hear evidence under § 10(a)(3). Because the Court finds that respondents' argument fails, it is unnecessary to decide the question here. *Doral Fin. Corp. v. Garcia-Velez*, 725 F.3d 27, 31 n.7 (1st Cir. 2013)

evidence presented to them." *Doral Fin. Corp. v. Garcia-Velez*, 725 F.3d 27, 31 (1st Cir. 2013) (citing *Hoteles Condado Beach, La Concha and Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) ("Every failure of an arbitrator to hear relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.")). Instead, the test under § 10(a)(3) is whether "the exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Doral*, 725 F.3d at 31-32 (quoting *Hoteles Condado*, 763 F.2d at 40).

A "fair hearing" requires "an opportunity to present relevant evidence and arguments." *Doral*, 725 F.3d at 32 (citing *Raytheon Co. v. Automated Bus. Sys., Inc.*, 882 F.2d 6, 8-9 (1st Cir. 1989). Here, respondents acknowledge that they received at least two pre-hearing opportunities to persuade the panel to issue the requested subpoenas. On both occasions respondents submitted a brief in support of their requests, and on both occasions, "the tribunal provided [] ample support, in written and unequivocal form, for its decision to deny the subpoenas." *Doral*, 725 F.3d at 32. Moreover, whether a panel's decision not to allow a party to present evidence renders a hearing unfair must be decided only in light of the parties' contract. *Nat'l Cas. Co. v. First State Ins. Group*, 430 F.3d 492, 497 (1st Cir. 2005). As respondents' customer agreement warned, "[t]he ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings." (R. at 1547, Customer Agreement ¶ 18).

The FINRA Code grants the arbitration panel the authority to issue or deny subpoenas, manage discovery, ensure that parties follow discovery guidelines and proceed in good faith, and issue sanctions if the panel finds that either party does not follow these guidelines. FINRA Code, Discovery Sanctions, §§ 12511-12 (amended 2013).

Here, the panel may well have acted unfairly. It appears that the chair denied respondents the right to obtain the Verizon information, then concluded that the same information "seems to be important." Presumably, the panel could not and did not take that information into account, as it was not part of the record. However, the panel was acting within its legal authority when it reviewed and denied respondents' requests for subpoenas and this Court is without the power to vacate the award on that basis.[6]

### C.     9 U.S.C. § 10(a)(2) – Evident Partiality

Respondents further challenge the award under § 10(a)(2) on the ground that the panel displayed evident partiality towards Rogers and against respondents. "[E]vident partiality means a situation in which 'a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration.'" *JCI Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Local 103*, 324 F.3d 42, 51 (1st Cir. 2003) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir. 2002) (internal quotations omitted). "[A] party seeking to vacate on this ground has 'a high burden of demonstrating objective facts inconsistent with impartiality.'" *Brown v. Brown-Thill*, 762 F.3d 814, 820 (8th Cir. 2014) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 105 (2d Cir. 2013)). Respondents have not met that burden here.

As an initial matter, "this [C]ourt generally will not hear claims of partiality first raised after the arbitration proceedings conclude." *Lumber Liquidators, Inc. v. Sullivan*, 2011 WL 5884252, at *4 (D. Mass. Sept. 27, 2011) (citing *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins.*, 866 F.2d 11, 13 (1st Cir. 1989)). Respondents did not raise any such challenge during the proceedings.

---

[6] Respondents also argue that the award should be vacated under § 10(a)(3) on the ground that the panel's damages award constituted "misbehavior." For the reasons already discussed, that argument is without merit.

14

Nor have respondents identified evidence in the record that the panel held or failed to disclose a pre-existing bias or conflict of interest. Instead, respondents merely assert the same arguments concerning the panel's discovery rulings and award as evidence that the panel was partial to Rogers. Although a biased panel may make rulings against a party that nonetheless may be within its authority, the fact that any panel, in exercising its authority, makes an unfavorable ruling does not, alone, provide evidence of bias. Put another way, all panels—both partial and impartial—must make decisions and rulings, and each decision will have a winner and a loser. That does not mean, however, that the panel is necessarily partial to the winner, even if the panel consistently (or ultimately) rules in favor of the same side.

In effect, respondents ask the Court to infer partiality not from the existence of undisclosed bias or facts indicating an improper motive on the part of the panel, but from the panel's award of damages. Respondents have not submitted any facts demonstrating that the alleged "partiality" was based on anything other than the facts and argument presented by the parties. Thus, a reasonable person certainly would not have to conclude that the panel was partial to Rogers.

### D. Manifest Disregard

Respondents' lastly challenge the panel's damages award on basis that it was in manifest disregard of the law. It is far from clear as to whether the doctrine of manifest disregard remains open in the First Circuit as an avenue for vacating an arbitration award. *See Raymond James*, 780 F.3d at 64-65 (citing *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification.")).

In order to show that a panel's decision was in manifest disregard of the law, respondents

must demonstrate "that the arbitrators knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Raymond James*, 780 F.3d at 64 (quoting *Stolt-Nielsen*, 559 U.S. at 672 n.3).  Respondents have not identified any law controlling the outcome of the dispute, other than Massachusetts law requiring that lost future pay be discounted to present value.  However, because the panel did not give reasons for why or how it arrived at the amount of the damages it awarded, it cannot be demonstrated that the panel actually failed to apply that law in calculating damages, much less that the panel "willfully flouted" it.  Thus, even assuming that the doctrine of manifest disregard is available in theory, the Court finds that it is not applicable to this case.

### IV.     Conclusion

For the foregoing reasons, respondents' motion to vacate is DENIED and petitioner's cross-motion to confirm the arbitration panel's award is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
Dated: March 9, 2016                                                United States District Judge